IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2002 Session

## JAMES H. KELLEY, ET AL. V. JOHN CAGE, M.D., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. OOC-1559     Barbara Haynes, Judge**

———————————

**No. M2001-00702-COA-R3-CV - Filed June 18, 2002**

———————————

This appeal involves the granting of a summary judgment motion in a medical malpractice case. The issue is whether the trial court properly granted summary judgment on the basis that there was never a physician/patient relationship between the decedent, Lillie Donnette Kelley, and Dr. John Cage, a cardiologist, and an employee of Mid-State Cardiology Associates, P.C..

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

JANE W. WHEATCRAFT, Sp. J., delivered the opinion of the court, in which BEN H. CANTRELL, P. J., M.S. and WILLIAM B. CAIN, J., joined.

Steven R. Walker, Memphis, Tennessee, and Daniel L. Clayton, Nashville, Tennessee, for the appellants, James H. Kelley, et al.

Brian D. Cummings, Nashville, Tennessee, and Clarence James Gideon, Nashville, Tennessee, for the appellee, John Cage, M. D. and Mid-State Cardiology Associates, P. C.

### OPINION

Lillie Kelley had an acute myocardial infarction on April 18, 1999. She was hospitalized and treated by Dr. William Fleet, a cardiologist employed by Mid-State Cardiology Associates, P. C. She was discharged after four days. On June 10, 1999, Mrs. Kelley returned to the Emergency Room at Baptist Hospital and was treated by Dr. John Anderson. She described her symptoms as being identical to the ones she had during her previous heart attack. Dr. Anderson telephoned the cardiologist, Dr. William Fleet, but was unable to reach him and spoke instead to Dr. John Cage, a cardiologist, also employed by Mid-State Cardiology Associates, P. C. After the conversation with Dr. Cage, Mrs. Kelley was released from the hospital emergency room. On June 17, 1999, she suffered acute cardiopulmonary arrest and died. Between Mrs. Kelley's release from the hospital and

her demise, there was contact with several other professionals but those interactions are not relevant to the issue here for review.

Suit was filed by the surviving spouse and children against multiple parties. Defendants John Cage, M.D. and Mid-State Cardiology Associates, P. C. filed a Motion for Summary Judgment. The two issues raised by the summary judgment motion were (1) whether a physician/patient relationship existed between Dr. Cage and Lillie Kelley and if so, (2) whether Dr. Cage deviated from the recognized standard of acceptable professional practice for cardiologists. The trial court found as a matter of law that there was not a physician/patient relationship and, therefore, did not discuss the merits of issue two: standard of care. The trial court held that to establish a physician/patient relationship "the patient must knowingly seek the assistance of a particular physician and the physician must knowingly accept the individual as patient." Jennings v. Case, 10 SW3 625, 628 (Tenn)App. 1999. Summary judgment was granted pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure and the Court directed entry of the Order as a final judgment on February 23, 2001. The plaintiffs appealed.

This court is to conduct a *de novo* review of the trial court's granting of the Motion for Summary Judgment. Since the inquiry involves purely a question of law, no presumption of correctness attaches to the trial court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civil Proc 56 have been met. Carvell v. Bottom, 900 SW2 23, 26 (Tenn. 1995). We must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in their favor and discard all countervailing evidence. Clifton v. Bass 908 SW2 205, 205 (Tenn. App. 1995). If the mind of the court entertains any doubt whether or not a genuine issue exists as to any material fact, it is the duty to overrule the motion. The Court is not to "weigh" the evidence when evaluating a Motion for Summary judgment. Byrd v. Hall 847 SW2 208, 210 (Tenn 1993).

The position of the appellants is that when Dr. Cage decided to review Mrs. Kelley's case and make treatment recommendations, he accepted her as a patient. Secondly, since Dr. Cage was an associate/partner of Dr. Fleet, it can be reasonably inferred that he was acting as the agent of Dr. Fleet. Dr. Anderson, the emergency room doctor, testified in his deposition that he called the cardiologist for input on whether or not Mrs. Kelley should be admitted to the hospital for further testing or interventions. Dr. Anderson testified that he called the cardiologist because Anderson's review of the patient's prior medical record revealed a partially occluded left anterior descending artery. He testified he read the report "verbatim" to Dr. Cage to let him make the determination of the significance of that information. The following excerpts from Dr. Anderson's deposition indicated that he relied on the advice of Dr. Cage in determining a treatment plan:

Q. **Did you rely upon Dr. Cage's advice in determining your plan of treatment for Ms. Kelley?**

A. **Yes.**

Q. Tell me each and every way that you relied upon his advice in determining your plan of treatment for Ms. Kelley.

A. **When I call the subspecialist, I rely on their expertise in reviewing the cardiac catheterization, her previous history, and whether it is in sync with her current medical therapy or whether there's other acute interventions that needed to be done at the time.**

Q. Did you explain to Dr. Cage that Ms. Kelley had been a patient of Dr. Fleet's?

A. Yes, I did.

. . .

A. . . . I didn't know their outpatient status. I knew that she had had an MI [myocardial infarction] and was treated by Dr. Fleet within two months. **I felt it was imperative to call the cardiologist.**

. . .

Q. **If Dr. Cage would have suggested to you that in his opinion Ms. Kelley needed admitted, what would you have done?**

A. **I'd have admitted her.**

Q. **If Dr. Cage had suggested to you that perhaps some other tests should be performed, what would you have done?**

A. **I'd have said, "Let's put her in the hospital and do them."**

(Anderson dep., pg. 29, 1. 14 - pg. 30, 1.22) (emphasis added).


Appellants further state that while it is undisputed that Dr. Cage never met Mrs. Kelley personally, Dr. Anderson acted on her behalf when he called Dr. Cage and accepted Dr. Cage's treatment recommendation. "It is not necessary under Osborne for the physician and patient to have a face-to-face meeting or that they know each other's name. The requirement is that the relationship of physician and patient be contractual and that may arise out of a consultation by the patient's primary physician with another physician when that consultation is for the treatment of the patient.", Bass v. Barksdale, 671 SW2 476, 486-487 (Tenn. App. 1984). Appellants aver that it is the treatment recommendation that is significant in the formation of the physician/patient relationship.

Appellee's position is that the trial court properly relied on the Jennings case wherein it was stated that "the patient must knowingly seek the assistance of a particular physician and the physician must knowingly accept the individual as a patient."

The trial court's granting of summary judgment to Dr. Cage and to Mid-State Cardiology Associates, P. C. was premised on the fact that duty is an indispensable element of a medical malpractice claim and that the existence of a physician/patient relationship is the essential duty element of the instant malpractice action, Estate of Doe v. Vanderbilt, 958 SW2 117, 122 (Tenn. App. 1977), citing Bradshaw v. Daniels, 854 SW2 865, 870 (Tenn 1993) and Pitman v. Upjohn Co., 890 SW2 425, 431 (Tenn. 1994). The court went on to hold that Plaintiffs did not prove the necessary physician/patient relationship as a matter of law, that Dr. Cage had no duty to Mrs. Kelley, and, therefore, summary judgment was warranted. Whether there is a duty owed by one person to another is a question of law to be decided by the Court. Dooley v. Everett, 805 SW2 380.

This Court respectfully disagrees with the trial court's finding that Plaintiffs failed to establish the necessary physical/patient relationship to overcome a motion for summary judgment. The facts in this case are very different from those in Jennings. In Jennings, the patient's primary care physician referred the patient to another physician with a certain speciality. That physician accepted the referral and saw the patient, ordered testing and made a subsequent appointment to see the patient again.

In the case at bar, Lillie Donnette Kelley suffered a heart attack in April, 1999. Dr. William Fleet with Mid-State Cardiology Associates, P.C. was her cardiologist. On the 10th day of June, 1999, Mrs. Kelley suffered chest pains and went to Baptist Hospital emergency room. Dr. John L. Anderson, emergency room physician, attempted to call Dr. Fleet. Unable to reach Dr. Fleet, Dr. Anderson called Dr. John Cage with Middle Tennessee Cardiology Associates, P. C. Dr. Cage accepted the call, and although prior to this phone call was unaware of this patient, he conferred with the emergency room physician concerning Mrs. Kelley's treatment and followup. Dr. Cage was an agent of Mid-State Cardiology Associates, P. C. It is implied he was acting for Dr. Fleet.

Dr. Anderson had ordered an electrocardiogram on Mrs. Kelley and it did not show any acute changes. Her cardio enzymes were normal, but Dr. Anderson felt it necessary to consult with her cardiologist. He explained to Dr. Cage that Mr. Kelley had been a patient of Dr. Fleet. Dr. Anderson relied upon the advice of Dr. Cage, particularly as to whether Dr. Cage thought that the patient could be symptomatically treated with followup with Dr. W. Thomas Patten, her primary care physician or Dr. Fleet the following day or so. Dr. Cage stated that he thought this was reasonable based upon the clinical scenario he was provided.

The reality of medical practice today is that physicians are often part of a large professional organization and cover for each other on a regular basis. In this case both doctors, Fleet and Cage, are shareholders and employees of Mid-State Cardiology Associates, P. C. There is no question that Mrs. Kelley knowingly sought the services of Dr. Fleet, that she was his patient, and it follows that Mrs. Kelley had a contractual relationship with Mid-State Cardiology Associates, P.C.

Under the common law of contracts, Mrs. Kelley was responsible to Mid-State Cardiology Associates, P. C. for the services rendered to her on the 10th day of June, 1999 by Dr. Cage. "In this day of specialization, doctors every day read x-rays for patients with whom they have never met." Bass i.d. Patients pay physicians they have never met but who have performed some services at the request of the treating physicians. The relationship of physician/patient, while contractual, can also be implied.

In this case, Dr. Anderson relied on the recommendation and opinion of Dr. Cage to determine Mrs. Kelley's treatment. The court finds from all of the above, that there are genuine issues of material fact concerning the treatment recommendations and reliance thereon. There are factual issues regarding standard of care which may well be decided in Dr. Cage's favor, but were never addressed by the trial court because of its ruling on the physican/patient issue. The granting the Motion for Summary Judgment was error and shall be reversed.

Costs of the appeal are assessed to appellee for which execution may issue if necessary.


_____
JANE W. WHEATCRAFT, SP. JUDGE